CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (#1216)
djc@campbellandwilliams.com
PHILIP R. ERWIN, ESQ. (#11563)
perwin@campbellandwilliams.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| VINCENT BURLINGAME, an individual; RICHARD CARTY, an individual; JAMES JACKSON, an individual; CHRISTOPHER LaCASCIA, an individual; JAMES MARTIN, an individual; JONATHAN MOLNAR, an individual; BENJAMIN NESS, an individual; DeJUAN ROBINSON, an individual; and MICHAEL STATKIEWICZ, an individual, | ) ) ) ) ) ) ) ) ) ) | CASE NO. 2:11-cv-00960-PMP-RJJ **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO SEAL AND FOR PROTECTIVE ORDER AND** <u>**REQUEST FOR SANCTIONS**</u> |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| LAS VEGAS SANDS CORP., a Nevada corporation; LAS VEGAS SANDS, LLC, a Nevada limited liability company; VENETIAN CASINO RESORT, LLC, a Nevada limited liability company; ZOHAR LAHAV, in his individual and representative capacity, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs VINCENT BURLINGAME. RICHARD CARTY, JAMES JACKSON,

CHRISTOPHER LaCASCIA, JAMES MARTIN, JONATHAN MOLNAR, BENJAMIN NESS,

DEJUAN ROBINSON, and MICHAEL STATKIEWICZ through their attorneys of record,

1



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

hereby file the following Opposition to Defendants' Motion to Seal and for Protective Order and Request for Sanctions:

## POINTS AND AUTHORITIES

### I.   INTRODUCTION

For Defendants Las Vegas Sands Corp. and Venetian Casino Resort (collectively referred to herein as "LVSC") and their Chairman, Sheldon Adelson, motions to seal legal proceedings in which they are a party is as certain as night follows day.   Experience has shown that their motions to seal are driven by the compulsion to inhibit any critical examination of their actions, just as that same compulsion has inspired numerous unsuccessful defamation suits against newspapers and journalists who have demonstrated the temerity to publish anything which offends their hypersensitive nature.

For example, in *Jones, et al. v. Las Vegas Sands Corp.*, Eighth Judicial District Court of Nevada, Case No. A516404, LVSC consumed the Court for months on end with a similarly meritless motion to seal virtually every aspect of the proceedings while at the same time seeking to strangle opposing counsel's ability to speak openly with fact witnesses.   *See* Exhibit "1," Declaration of Donald J. Campbell.   LVSC engaged in this practice yet again in *Suen v. Las Vegas Sands Corp.*, Eighth Judicial District Court of Nevada, Case No. A493744, where it unsuccessfully sought to seal testimony and exhibits at trial.   *See* Exhibit "2," Objection to Media Request.

On the defamation front, one fairly recent example is the abusive suit LVSC filed against the *Las Vegas Sun* and its former publisher, the revered Barbara Greenspun.   LVSC claimed it had been libeled when the newspaper republished comments made by Nevada Gaming officials concerning LVSC's "sorry regulatory history."   To no one's surprise that case was dismissed;



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

2

but not before LVSC sent the chilling message that even accurate reports of its misconduct would be met with a punitively expensive lawsuit. *See* Exhibit "3," Order of Dismissal.

This Motion is no different. It seeks to impose a public embargo on virtually every aspect of the case until Plaintiffs comply with a "protective order," the scope of which is nothing short of breathtaking and which gives new meaning to the term "burdensome and oppressive." Defendants base this ludicrous request on Plaintiffs' supposed disclosures of confidential information in this proceeding that have endangered the Adelson family. Defendants also argue that Plaintiffs will undoubtedly disclose confidential information in the future. In reality, these concerns are nothing more than a pretext to muzzle Plaintiffs and prevent further public scrutiny of Defendants' actions.

## II.    FACTUAL BACKGROUND

Like most discovery disputes, an evaluation of the relative merits of each side's position is largely dependent upon an examination of the factual development of the conflict.

### A.    Timeline

Accordingly, the Plaintiffs set forth below a timeline of the relevant events in the current dispute.

- **Friday, June 10, 2011.** Plaintiffs, nine Executive Protection Agents ("EPA") (some currently and others formerly employed by the Las Vegas Sands Corporation ("LVSC") who serve on an Executive Protection Team ("EPT") which provides security for LVSC Chairman, Sheldon Adelson, as well as his immediate and extended family), file their Complaint (#1) seeking damages under the Fair Labor Standards Act ("FLSA") for unpaid overtime, retaliation and unlawful discharge.



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

3

- **Thursday, June 16, 2011.** Defense counsel Littler Mendelson, refuses to accept service on behalf of their clients, LVSC and Zohar Lahav, the Vice President of Executive Protection. *See* Exhibit "4," Campbell E-mail of June 17, 2011.

- **Tuesday, June 21, 2011.** LVSC is served with the Complaint.

- **Wednesday, July 13, 2011.** Defendant Zohar Lahav is finally tracked down in a local bar and served with the Complaint. *See* Summons Returned Executed (#8).

- **Friday, July 22, 2011.** The Fed. R. Civ. P. 26(f) conference is held with counsel for all parties in attendance. All required topics to be addressed by the parties are discussed. Defense counsel Rick D. Roskelley makes no mention of any need for a protective order. *See* Exhibit "1," Declaration of Donald J. Campbell.

- **Monday, July 25, 2011.** Lahav's deposition is noticed for Wednesday, August 10, 2011. Although not required under the Federal Rules of Civil Procedure, Lahav is also personally served with a subpoena to ensure his appearance. *See* Subpoena Returned Executed (#10).

- **Tuesday, July 26, 2011.** All five EPAs still employed by LVSC are notified that they are being assigned to entry level positions as unarmed uniform security. They are directed to report to a post located outside the Sands Expo and Convention Center to perform the mundane task of checking employee identifications.

- **Tuesday, July 26, 2011.** Roskelley sends a letter to Plaintiffs informing them that Lahav will attend his scheduled deposition on August 10, 2011. *See* Exhibit "5," Roskelley letter of July 26, 2011. Roskelley makes no mention of the need for a protective order. *Id.*

- **Friday, July 29, 2011.** At 3:30 p.m., the EPAs file for a temporary restraining order and preliminary injunction seeking to block their demotion as being violative of the FLSA's



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

anti-retaliation provisions (#11, 12). Less than one hour later, the Honorable Philip M. Pro sets the hearing on the TRO for Tuesday morning, August 2, 2011, at 8:30 a.m. (#14).

- **Tuesday, August 2, 2011.** Following a 45 minute hearing, Judge Pro grants Plaintiffs' Motion and enjoins Defendants from demoting the EPAs to uniform security positions (#16).

- **Tuesday, August 2, 2011.** Philip Erwin of Campbell & Williams prepares and forwards the proposed FRCP 26(f) Scheduling Order and Discovery Plan to Roskelley for his review and comment. *See* Exhibit "6," Erwin E-Mail of August 2, 2011.

- **Thursday, August 4, 2011.** Despite Roskelley's admonition that he is unavailable to discuss the case, Erwin nevertheless persuades him to accept a limited five minute telephone conference to discuss Lahav's upcoming deposition on Wednesday, August 10, 2011. *See* Exhibit "7," Correspondence of August 4, 2011. During the brief call, lead counsel for Plaintiffs Donald J. Campbell explains that he is on vacation and wishes to confirm that Lahav will appear as scheduled for his deposition because Campbell must book his return flight from Hailey, Idaho to Las Vegas. Roskelley confirms that the deposition will go forward and Campbell books his flight home. *See* Exhibit "1," Declaration of Donald J. Campbell. Roskelley makes no mention of any pre-conditions to the taking of the deposition and, likewise, does not mention any concerns over confidentiality or the need for a protective order. *Id.*

- **Friday, August 5, 2011.** Erwin e-mails Roskelley alerting him that he has yet to forward his comments on the draft FRCP 26(f) Scheduling Order and Discovery Plan and reminds him that the deadline for filing is at the end of the day. *See* Exhibit "8," Correspondence



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

of August 5, 2011.  Roskelley responds that he is out of town and declines to address the matter until the following week.  *Id.*

- **Friday, August 5, 2011.**   Campbell receives a late afternoon telephone call from Roskelley's partner, Patrick Hicks, who informs him that he intends to draft and submit a proposed protective order to Campbell on Monday, August 8, 2011.  *See* Exhibit "1," Declaration of Donald J. Campbell.  Campbell informs Hicks that he is agreeable to entering into a stipulation on confidentiality of the upcoming deposition.  *Id.* Hicks thanks Campbell for the courtesy and terminates the call.  *Id.*

- **Monday, August 8, 2011.**  Roskelley e-mails Erwin regarding the proposed FRCP 26(f) Scheduling Order and Discovery Plan and requests the inclusion of language to the effect that discovery is stayed until the entry of a confidentiality order.  *See* Exhibit "9," Correspondence of August 8, 2011.  Erwin declines to agree to the insertion of Roskelley's proposed language and specifically cites Lahav's impending deposition as a reason why such language would be inappropriate.  *Id.* Once again, Erwin offers to enter into a stipulation until the entry of a stipulated confidentiality order.  Roskelley does not respond.  *Id.*

- **Tuesday, August 9, 2011.**   At approximately 2:30 p.m., Roskelley calls Erwin and informs him for the first time that the deposition of Lahav cannot go forward without a protective order in place.  *See* Exhibit "10," Erwin E-mail of August, 9, 2011.  Erwin refuses to cancel Lahav's deposition, but reiterates Campbell's offer to stipulate to the confidentiality of those portions of Lahav's deposition which LVSC believes to be confidential.  *Id.*

- **Tuesday, August 9, 2011.**  Late that afternoon, at **4:16 p.m.** Peter Navarro of Littler Mendelson sends a proposed protective order which is remarkable for both its length and



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

overbreadth. *See* Exhibit "11," Navarro Letter of August 9, 2011. Navarro notifies Erwin that he wants Erwin's comments by the "close of business" that day. *Id.*

- **Wednesday, August 10, 2011.** Lahav, accompanied by Roskelley, appears for his deposition. Roskelley informs Campbell that it is his intention to direct Lahav not to answer any questions which he believes calls for discussion of "confidential" information. *See* Exhibit "12," Deposition of Zohar Lahav, pgs. 6-13. Roskelley does not dispute that he never mentioned any purported "need" for a protective order at the 26(f) conference. *Id.* Nor does Roskelley contend that he made any effort to seek a protective order or hearing before His Honor on this issue as required by FRCP 37. *Id.* Finally, Roskelley goes so far as to decline Campbell's offer to stipulate to the confidentiality of the deposition until such time as the Court can consider the matter. *Id.*

- **Wednesday, August 10, 2011 (A.M.)** In slightly over two hours of testimony during the morning session of his deposition, Lahav sheds light on a variety of damaging facts and is repeatedly impeached after he engages in rank mendacity on numerous topics. The Court is asked to consider the following representative examples:

  o Lahav is "in charge" and "runs the entire department" of Executive Protection for LVSC. He oversees everything that has to do with the operation including policies, procedures, planning, training, budget, expenses, financing, hiring and firing, and scheduling of shifts for the EPT. *Id.* at 40-43, 54, 119.

  o Lahav has had *no* executive training in the 13-14 years that he has been in charge of the EPT. *Id.* at pgs. 67-68.

  o Defendants have not paid overtime to any member of the EPT in the history of its existence. *Id.* at 70-71.

  o Lahav *initially denied* making any administrative changes to the operation of the EPT after the filing of this lawsuit other than scheduling changes to accommodate LVSC's retaliatory removal of Plaintiffs from duty. *Id.* at 69-70. Lahav was then impeached and *forced to admit* that Defendants *are* now keeping records on overtime worked by members of the EPT contrary to his earlier representations. *Id.* at 114-119. This comprehensive change in procedure was instituted after this lawsuit was filed at the direction of Lahav himself. *Id.* Lahav, in fact, crafted the



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

new timesheets to track overtime worked and issued a directive to track all time worked over forty (40) hours in a week. *Id.*

o Lahav testified that the Executive Management Team for the EPT has consisted exclusively of Israelis at all times during his 13-14 year tenure. *Id.* at 28-31. He further testified that during that same fourteen year period there has never been an African-American "mid-level supervisor" on the EPT. *Id.* at 76. Lahav's explanation of why no African-Americans had ever been supervisors was that they were all unqualified or because they came on the EPT "late." *Id.* at 77.

o Lahav admitted that, despite the request of Plaintiffs' counsel to preserve all surveillance video related to Plaintiff Statkiewicz's unlawful termination, all evidence had been destroyed. *Id.* at 97.

o Lahav admitted that he does not know the legal requirements for the release of employees with responsibilities to the Armed Forces of the United States even though EPT members have been and still are required to fulfill reserve duty service. *Id.* at 104-105.

o In his previous employment with the City of Miami, Lahav admitted he, himself, demanded overtime pay. *Id.* at 120-121.

o Lahav is unaware of whether members of the EPT are covered by the Nevada State Industrial Insurance System. *Id.* at 123-124.

• **Wednesday, August 10, 2011 (P.M.)** Having returned from the lunch recess, Roskelley abruptly terminates the deposition after only three (3) minutes of testimony. *Id.* at 125-127. Roskelley, Lahav, and company representative Brian Nagel leave the deposition despite Campbell's protests and warning that the Plaintiffs will seek sanctions. *Id.* Roskelley responds that this "is what litigation is all about." *Id.*

**B.    Defendants Terminated The Deposition In Bad Faith**

As detailed in the above timeline, Defendants' contention that they made a good faith effort to resolve their issues on the need for a protective order *before* the deposition of Zohar Lahav is more than just a bit disingenuous. Indeed, Roskelley never even broached the topic of having an agreed upon protective order in place as a precondition to the deposition going forward until the eve of Lahav's scheduled appearance.

CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

8

Similarly, the contention that Plaintiffs were somehow uncooperative is also demonstrably false. As the record clearly shows, Plaintiffs repeatedly offered to stipulate to confidentiality in discovery until a protective order could be agreed upon by the parties and/or resolved by the Court. This offer was flatly rejected both on Tuesday, August 9th as well as on the morning of the deposition, Wednesday, August 10th. *See* Exhibit "12," Deposition of Zohar Lahav, pgs 7-12.

Defendants contend they rejected this offer on the grounds it was merely "sort of a gentlemen's agreement" which did not provide any assurance that "sensitive security related information would not end up in the public domain." *Id.* Not true. Plaintiffs' counsel offered not a "gentlemen's agreement," but, instead, offered a *binding stipulation* of confidentiality subject to enforcement by the imposition of sanctions. *Id.* Thus, it was Defendants' counsel, not the undersigned, that rejected every meaningful and reasonable effort to resolve the "dispute."

Equally erroneous is the suggestion that the unilateral termination of the deposition was permissible because "it appeared that Plaintiffs' counsel had run out of questions to ask Mr. Lahav."[1] *See* Motion, p. 15:20-22. Zohar Lahav is the most critical witness in the case. At the time his deposition was terminated he had given only two hours and eighteen minutes of actual testimony. The undersigned counsel represents nine separate Plaintiffs. Each Plaintiff has issues idiosyncratic to his individual claims which must be explored in discovery. Under such circumstances, no attorney could ever be said to have comported with a standard of reasonable

---

[1]   In fact, Mr. Roskelley acknowledged he was preventing Mr. Campbell from inquiring into "operational issues which are a very critical and important component of this case." *See* Exhibit "12," Deposition of Zohar Lahav, pgs. 89-91. For Defendants to now assert that Plaintiffs' counsel had "run out of questions" when they were intentionally barring inquiry into crucial aspects of the case, indelibly soils their claims that all of their actions were clothed in "good faith."

CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

9

litigation practice by conducting the deposition of the most important witness in the case in less than two and a half hours.

Clearly then, these facially meritless arguments only serve to underscore the indisputable fact that the Defendants were determined that Zohar Lahav would not be deposed. Defendants' eleventh hour machinations about the need for a protective order were simply a ruse to achieve that goal. That having been said, Plaintiffs will now turn to the all-inclusive protective order sought by Defendants.

## III.   ARGUMENT

### A.   Legal Standard

"The common law right of public access to judicial documents is said to predate the Constitution." *United States v. Amadeo*, 44 F.3d. 141, 145 (2d. Cir. 1995). The United States Supreme Court has recognized the public's right to inspect and copy court documents and otherwise have access to judicial proceedings. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("[h]istorically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents"). "This right is justified by the interest of citizens in keeping a watchful eye on the workings of public agencies." *Kamakana*, 447 F.3d at 1178.

Logically, the courts have extended this right to attendance at court proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *see also Republic of the Phillipines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) (holding that the First Amendment and the common law protect the public's right of access to civil proceedings); *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (finding that importance of

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

public scrutiny of public proceedings is just as important as that of criminal proceedings, and the right of access to those proceedings is well-established).

With these important policy interests in mind, the Ninth Circuit has held that "a strong presumption of public access is the starting point" when addressing a request to seal a judicial record. *Kamakana*, 447 F.3d at 1178. Indeed, "[a] party seeking to seal a judicial record [ ] bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Id.* (citing *Foltz v. State Farm Mut. Auto Insur. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79 (internal citations omitted). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1179.[2]

The substantial burden that Defendants must overcome in order to prevail on their Motion is made infinitely more difficult by the expansive nature of the proposed Protective Order. *See* Exhibit "11" Proposed Stipulated Protective Order. Initially, Defendants argue that Plaintiffs— and only Plaintiffs—must file *everything* under seal. *Id.* at § VII. Then, Defendants will be able to unilaterally designate any and all information they believe would be dangerous to the Adelson family which, as will be detailed below, includes even the most harmless and readily available facts. *Id.* Simply put, Defendants seek *carte blanche* to censure Plaintiffs and preclude the public from gaining any insight into this public proceeding.

---

[2]   Defendants muddle the "compelling reasons" and "good cause" standards that are described by the Ninth Circuit in *Kamakana*. To be clear, the "good cause" exception to the presumption of access to public records only applies to a "sealed discovery document attached to a non-dispositive motion." *Kamakana*, 447 F.3d at 1179. Obviously, this limited exception is inapplicable here as Defendants seek much more than the sealing of isolated documents produced during discovery.

CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

11

At the outset, it is well established that it is improper for a district court to grant a party *carte blanche* to decide which information is confidential and should be sealed from the public eye. *See, e.g., Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999) (raising the inherently flawed nature of the parties' confidentiality order *sua sponte* where it allowed parties to unilaterally "designate information as confidential, and thus keep out of the public record of the litigation, any document" believed to contain confidential or trade secret information); *Cook Inc. v. Boston Scientific Corp.*, 206 F.R.D. 244, 247 (S.D. Ind. 2001) ("[a] court may not issue a 'blanket' or 'umbrella' protective order that gives the parties *carte blanche* to decide which information to protect..."); *Bayer AG and Miles, Inc., v. Barr Lab., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995) ("'umbrella' protective orders are disfavored...").

In *Citizens First*, the well-respected legal scholar Judge Richard A. Posner addressed the entry of a protective order similar to that requested by Defendants as follows:

> There is a deeper issue of confidentiality in this case than the currency of the protective order, and we must address it in order to make clear the judge's duty on remand. That issue is the judge's failure to make a determination, as the law requires, of good cause to seal any part of the record of a case. ***Instead of doing that he granted a virtual carte blanche to either party to seal whatever portions of the record the party wanted to seal. This delegation was improper. The parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding.***
>
> *     *     *     *     *
>
> ***The determination of good cause cannot be elided by allowing the parties to seal whatever they want, for then the interest in publicity will go unprotected unless the media are interested in the case and move to unseal.*** The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it). He may not rubber stamp a stipulation to seal the record.

*Citizens First*, 178 F.3d at 944 (emphasis added); *see also Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996) ("The District Court cannot abdicate its responsibility to oversee the discovery process and to determine whether filings should be made



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

12

available to the public. It certainly should not turn this function over to the parties, as it did here ... The protective order in this case allows the parties to control public access to court papers, and it should be vacated or substantially changed").[3]

As it is now clear that Defendants' request to seal and for protective order violates the letter and spirit of the law, Plaintiffs will now address the false claim that Plaintiffs have disclosed confidential information.

### B. The Fallacy of Defendants' Claims of Confidentiality

Relying upon an affidavit submitted by Brian Nagel (who is not and never has been in charge of the Executive Protection Team), the Defendants proffer a list of bullet points which they contend contains "information which, if disclosed, could pose a real and direct safety risk to members of the Protected Family." *See* Motion, pgs. 4:9-10; 21:13-22:1. The Plaintiffs will now discuss each of these categories in turn.

In order of prominence, Defendants claim the most important information to be protected relates to the "ages and genders of minor children." *Id.* at 4:12. Defendants have expanded on this theme throughout their Motion by repeatedly claiming that the "disclosure" in the Plaintiffs' Motion for Temporary Restraining Order that the Plaintiffs were tasked, not to protect Mr. Adelson, but rather Mrs. Adelson and "the Adelson boys, age twelve and fourteen" constituted a "reckless submission to the Court." *Id.* at 6:9-10; 8:1-3; 8:10-11 9:12-28; 19:24-20:1; 21:13. The rationale offered for this claim is that by disclosing the ages and genders of the adolescent sons, an "adversary" will now be able to access this information in an effort to "identify the children, locate their school(s) or develop patterns of activities or personal habits." *Id.* at 6:12-13.

---

[3]     Defendants' proposed Protective Order here is far more restrictive than even that which was agreed upon and entered in *Jones, et al. v. LVSC, supra.* See Exhibit "13," Stipulated Protective Order.



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

Really? Obviously Mr. Nagel did not perform a simple Google search before he prepared his Affidavit in support of this Motion to Seal. Had he done so, he would have discovered literally reams of personal material on the Adelson sons; including news articles, photographs, as well as details of their school and social activities. *See* Exhibit "14," Collected Materials on Adelson sons. So clearly, Mr. Nagel's condemnation of the "disclosure" that the Adelson children are adolescent males as being "reckless" was a dramatic overstatement to say the least. Indeed, it appears that the characterization "reckless" would seem far more aptly applied to Mr. Nagel's failure to acknowledge the extraordinary amount of information which is publicly available to any eight year old who has access to a computer and knows how to use any one of hundreds of internet search engines.

The same could be said of Mr. Nagel's criticism regarding the identities of "family members" who are protected. This information, too, has long been publicly available. Indeed, LVSC publicly disclosed that Adelson is granted an executive compensation perk of $2.5 million in security for himself and his immediate family. *See* Exhibit "15," April 29, 2011 Proxy Statement; Exhibit "16," Las Vegas Review-Journal Article of April 30, 2011. It is hardly a state secret that Adelson and his immediate family have a full security team providing them with around-the-clock protection. As to Adelson family as a whole, there is likewise abundant personal information regarding them which is readily available online. *See* Exhibit "17," Collected Materials on Adelson family. Notably, much of this information comes from the Adelsons themselves.

Further, Defendants raise the specter of the disclosure of the locations and addresses of the Adelson family homes. *See* Motion, p. 10; 4:25-28; 21:25-22:28. To be clear, Plaintiffs have not disclosed these details in any court filings. But even if they had, this information is also readily available in the public domain. Publications of no less stature than the New York Times

CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

and the New Yorker have disclosed that Adelson owns homes in Las Vegas, Malibu, Boston, and Tel Aviv. *See* Exhibit "18," Collected Materials on Adelson property. The exact addresses and property details are available on through any one of a multitude of internet search engines. *Id.*

Another fiction is the allegation that Plaintiffs will disclose travel dates and destinations which could endanger the family. *See* Motion, p. 10:17-24. They even go so far as to claim that LVSC is working with the FAA to seal this information. As the Court can surely see, there is a wealth of information regarding the manner in which the Adelson family travels.

For example, the website Flickr.com contains numerous photographs of the aircraft owned by Adelson and leased to LVSC. *See* Exhibit "19," Aircraft Photographs. To be sure, there are a litany of pictures of the aircraft with details including make, model, and tail numbers; the date and location that the pictures were taken; and in some circumstances, the names of the passengers. *Id.* In fact, the Adelson fleet of aircraft and where they are stored was detailed at length in an article in the Las Vegas Review-Journal less than two weeks ago. *See* Exhibit "20," LVRJ Article of August 18, 2011.

Similarly, Mr. Nagel's theatrical handwringing because it was disclosed that Mr. Adelson is guarded by Israelis who are armed with semi-automatic weapons is, in a word, silly. In their critically acclaimed book, *The Money and The Power: The Making of Las Vegas and Its Hold on America, 1947-2000*, New York Times and Washington Post reporters, Sally Denton and Roger Morris, exposed not only these very same facts, but also that Mr. Adelson actually reveled in public displays of his personal security detail:

> Adelson, the billionaire promoter and a right-wing Zionist with business and political ties to Israel, had the same mentality of the Strip's former overseers. He had gotten his start distributing vending machines in the 50's on the streets of Brockton, Massachusetts, where the Patriarca branch of the Syndicate rarely allowed competitors in the field, and his reactionary anti-unionism echoed the animus of the old mob toward independent organized labor. A crass new mogul



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

15

who behaved with the arrogance and impudence of an old boss, he went about the city in the 90's, even into the editorial offices of the Review Journal, with ex-Mossad body guards brazenly carrying semi-automatic weapons.

Sally Denton and Roger Morris, *The Money and The Power*, Pg. 363 (Alfred A. Kanoff, 2001)

Indeed, the undersigned counsel was, himself, subject to a similar act of intimidation while taking Mr. Adelson's deposition in *Jones v. LVS, supra*. *See* Exhibit "21," DVD of Adelson Deposition. The incident was ultimately resolved, when, after Mr. Adelson unilaterally terminated his deposition, his counsel, Rusty Hardin, Esq. apologized for his client's behavior. *Id.*

As for the remaining topics identified by Nagel, those being: the "number of security members;" "times of day when security teams change shift;" "job responsibilities;" "security policies and procedures;" and "descriptions of security training," *none* of these topics have been disclosed by the Plaintiffs. With respect to the assertion that specific assignments were disclosed, His Honor will recall that the representation that Plaintiffs did not guard Mr. Adelson was offered in rebuttal to LVSC's argument that the agents had to be "reassigned" because they otherwise would overhear Mr. Adelson talking about this litigation.

Defendants also base their request for a protective order on the so-called "confidentiality" of documents that "Plaintiffs are likely to file in Court" in the future. *See* Motion, p. 10:6-11:22. This claim is questionable at best. Plaintiffs have *not* filed any of these documents with the Court. As such, Defendants' claims are purely speculative and based on nebulous future harm that may never occur. This certainly does not constitute a "compelling reason" supported by "specific factual findings" necessary to overcome the public's constitutional right of access.

There is, however, a curious contrast which will be drawn between the conduct of the Plaintiffs and that of the Defendant, Zohar Lahav, Vice President of Executive Protection for the



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

16

Las Vegas Sands.  Upon resuming Mr. Lahav's deposition, Plaintiffs intend to explore a "security breach" which occurred in relation to the "sensitive" issues identified by Mr. Nagel as "geographic locations where security services are/were performed" and "personal habits and travel patterns of the Protected Family." *Id.* at 4:22; 27. Mr. Lahav is believed to have no hesitancy in disclosing when, where, and for whom he provides protection services. Indeed, Mr. Lahav is believed to have disclosed all of this "highly sensitive" information to complete strangers over the internet through the use of internet dating services.

In light of the foregoing, perhaps Mr. Nagel's time might be more productively spent in counseling Mr. Lahav on the issue of disclosing "highly sensitive matters" over the internet to strangers as opposed to fretting about the inconsequential comments that have been made by the Plaintiffs in a United States Courthouse.

### C.   Defendants' Personal Attack upon Plaintiffs and Their Counsel is Designed to Divert the Court's Attention from their Inexcusable Conduct in Terminating the Deposition

Defendants would have this Court believe that they filed this Motion as a last resort and only when confronted with a wholly unreasonable adversary. They argue, in short, that the actions of the Plaintiffs and their counsel have been so outrageous that the termination of Zohar Lahav's deposition was fully supported by the Federal Rules of Civil Procedure. Nothing could be further from the truth. We respectfully ask His Honor to consider the following legal authority and verifiable facts as opposed to the hyperbolic claims of calamity and racism which have been advanced by the Defendants.

### 1.   Abundant Legal Authority Strictly Forbids the Type of Conduct Engaged in by Lahav and his Counsel

Simply put, defense counsel's scheme to limit the fair examination of Mr. Lahav by instructing him not to answer certain questions and eventually terminating the deposition clearly contravenes the Federal Rules of Civil Procedure.  It is well established that counsel is prohibited

17



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

from directing a deponent not to respond to questions posed to him during a properly noticed deposition except in very limited circumstances. *See, e.g., Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) ("[t]he action of [ ] counsel in directing [the deponent] not to answer the questions posed to him was indefensible and utterly at variance with the discovery provisions of the Federal Rules of Civil Procedure"); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 902 (7th Cir. 1981) (the general rule "is that absent a claim of privilege, it is improper for counsel at a deposition to instruct a client not to answer"). Rather, "[i]f counsel objects to a question, he should state his objection for the record and then allow the question to be answered." *Eggleston*, 657 F.2d at 902.

Indeed, FRCP 30(c)(2) provides the "exclusive grounds for instructing a deponent not to answer." *Shapiro v. Paul Revere Life Ins. Co.*, 1997 WL 601430, *1 (N.D. Cal September 18, 1997); *see also Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) (counsel "shall refrain from instructing a witness not to answer, except as provided in Rule 30(c)(2)"). In pertinent part, FRCP 30(c)(2) provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Rule 30(d)(3), in turn, provides that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." FRCP 30(d)(3)(A) "[I]t should be clearly understood it is not the embarrassment or annoyance which may caused by unfavorable answers that is the criteria of 30(d)(3)." *In re Statosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D. Nev. 1998). To the contrary, "[i]t is the 'manner' in which the interrogation is conducted that is grounds for refusing to proceed…" *Id.*



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

18

Further, "[w]hile the issuance of an order terminating deposition is a matter within the sound discretion of the court, the power to halt or limit deposition is sparingly used." *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D 637, 640 (N.D. Ind. 1991). A party that is found to have impeded, delayed, or otherwise frustrated the fair examination of a deponent may also be subject to sanctions. Fed. R. Civ. P. 30(d)(2); *see also Rockwell Int'l, Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1326 (9th Cir. 1983) (affirming award of expenses where "advice [not to answer] was not substantially justified). Likewise, "an objecting party who demands the termination of a deposition may subject himself to costs and reasonable expenses, which may be considerable where the taking of the deposition has ceased upon demand, if the court finds that his motion for a protective order has no substantial basis." *Id.* at 640-41.

2. **Defendants' Improper Termination of Lahav's Deposition was Clearly Designed to Avoid the Elicitation of Further Damaging Testimony and was a Rank Violation of the Rules Governing Conduct During Depositions**

Prior to the deposition commencing, Mr. Roskelley plainly stated on the record that he would instruct Lahav not to answer questions related to "confidential information regarding the executive protection team or the principals." *See* Exhibit "12," Deposition of Zohar Lahav, p. 6. Mr. Roskelley further informed Plaintiffs that "to the point we get into information that we deem to be of a confidential nature, we may have to exercise [ ] our rights under Rule 30(d) to termination the deposition..." *Id.* at 12. As such, Mr. Roskelley was clearly laying the groundwork for his improper termination of Lahav's deposition.

Based on these representations, Mr. Roskelley improperly instructed Lahav not to answer questions relating to the assignments of EPAs on the grounds of confidentiality even though Defendants had failed to seek a protective order with the Court. *Id.* at p. 89-91. This instruction was patently improper as Mr. Roskelley was only permitted to instruct Lahav not to answer a question "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or

19

to present a motion under Rule 30(d)(3)." FRCP 30(c)(2).   Obviously, Mr. Roskelley's instruction not to answer based on confidentiality violated the plain language of the Federal Rules of Civil Procedure.

Then, less than three minutes after the restart after lunch, Mr. Roskelley abruptly terminated the deposition under the auspices of FRCP 30(d) in response to a question concerning an EPA that was injured while skiing with the Adelson children. *Id.* at 125-126. Notably, Mr. Roskelley *never* objected to the manner in which the deposition was being conducted or stated that it was being done to annoy, embarrass, or oppress Lahav. Rather, Mr. Roskelley brazenly terminated the deposition based solely on the subject matter that was being inquired into by Plaintiffs' counsel. This is a clear violation of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 30(d); *In re Statosphere Corp. Sec. Litig.*, 182 F.R.D. at 619.

It is undisputed that the only basis for the termination of Lahav's deposition was that Plaintiffs' counsel inquired into so-called confidential subject matter.   With that in mind, Defendants retroactively scrambled to craft an argument that the deposition was terminated pursuant to the narrow confines of FRCP 30(d), *i.e.*, that it was being conducted in bad faith or to annoy, harass, or oppress the deponent.   To that end, Defendants proffer the following synopsis of their personal attack against Plaintiffs' counsel:

> The questions asked by Plaintiffs' counsel during Mr. Lahav's deposition speak volumes about the Plaintiffs' true motives in this case.  During the deposition, Plaintiffs' counsel spent time asking the deponent insulting questions about race, his religion and the Protected Family, when he could have been asking questions that were actually relevant to Plaintiffs' FLSA claims.  These questions were designed only to harass and embarrass Mr. Lahav.

*See* Motion, pgs. 14:27-15:3.

This is utter nonsense which is wholly unsupported in the record. Courts have found this type of "*after-the-fact attempt to reconcile the unilateral termination of the [ ] depositions with the requirements of Rule 30(d) was disingenuous, at best.*" *Hearst/ABC-Viacom Entm't Serv.*



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

*v. Goodway*, 145 F.R.D. 59, 62 (E.D. Pa. 1992) (emphasis added).  As the *Hearst* court noted, *"[t]he various justifications put-forth in [the] memorandum bear little resemblance to the reasons given by defense counsel when he ended the deposition." Id.* (emphasis added).

What really occurred is as follows.  When faced with a rapidly approaching date for the deposition of Zohar Lahav, counsel for the Defendants unquestionably engaged in the usual extensive preparation of the witness. During that preparation they learned what Plaintiffs have long known . . . that Zohar Lahav has little, if any, regard for U.S. law.[4]  Despite being employed by a publicly traded corporation listed on the New York Stock Exchange, Lahav acted, quite literally, as a law unto himself.  Obviously, Defendants needed to concoct a ruse to conceal Lahav's incompetence and settled upon obscene accusations of racism and anti-Semitism.[5]

In addressing Defendants' baseless accusations, Plaintiffs ask the Court to consider the following. The FLSA provides that the statute of limitations can be extended from two to three years if the illegal conduct by the employer is "willful." 29 U.S.C. § 255(a).  A breach, in turn, is "willful" if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988).  Accordingly, Plaintiffs intend to demonstrate that Defendants, and Lahav in particular, created an atmosphere within the EPT of total disregard and contempt for federal law. Jurists have routinely found that violations of other federal employment laws are relevant to

---

[4]    As the Court will recall, Mr. Lahav's contempt for the laws of this country was specifically referenced at Paragraph 24 of the Complaint.

[5]    The leveling of baseless charges of anti-Semitism is nothing new for LVSC and its Chairman. In *Adelson v. Smith*, United States Bankruptcy Court for the District of Nevada, Case No. 2:08-BK-01012, columnist and author, John L. Smith and the Las Vegas Review Journal were similarly labeled as anti-Semitic. That claim was completely undermined when it was revealed that Smith's own mother was a Jew.  Adelson was ultimately forced to dismiss his defamation action against Smith and required to pay his costs. *See* Exhibit "22," Order of Dismissal.

CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

establishing a "willful" breach. *See, e.g., Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 551 (1999) (Stevens, J., dissenting with whom Souter, J., Ginsburg, J., and Breyer, J. join) ("***There are other means of proving that an employer willfully violated the law. An employer, may, for example, express hostility toward employment discrimination laws…***")[6]; *Herman v. RSR Sec. Serv. Ltd.*, 172 F.3d 132 (2d Cir. 1999) (citing other illegal business activities of the employer and its failure to comply with income tax laws when finding "reckless disregard" for the FLSA); *Ramirez v. Rifkin*, 568 F.Supp.2d 262 (E.D.N.Y. 2008) (violations of federal employment tax laws constituted evidence of "reckless disregard" for whether employer's conduct was subject to the FLSA). As such, Defendants' representations that Plaintiffs' counsel was fishing for irrelevant information or somehow harassing Lahav are merely after the fact pretexts.[7] Remember, Mr. Rosekelley *never* offered any objection to those questions or even hinted that they were in any way improper when they were asked.

In light of the foregoing authority, Plaintiffs' counsel quite rightly sought to elicit testimony regarding Lahav's complete lack of respect for federal law. As forecasted by Plaintiffs, Lahav's complete indifference to the laws governing employers was striking. *See* Exhibit "23," Declaration of Plaintiffs. For example, Lahav was totally unaware of the mandate

---

[6]     The United States District Court of Nevada has relied on this exact language from Justice Stevens' dissent in *Kolstad* when addressing "willful" or "intentional" violations of law in the employment context. *See E.E.O.C. v. Scolari Warehouse Mkt., Inc.*, 488 F.Supp.2d 1117 (D. Nev. 2007).

[7]     Even if Plaintiffs' counsel was inquiring into irrelevant subject matter—which is not the case—an instruction not to answer and subsequent termination of the deposition would still have violated the Federal Rules of Civil Procedure. "The irrelevancy of a question is not grounds to instruct a witness not to answer the question . . . Likewise, the mere fact that more than one irrelevant question is asked, or even a series of irrelevant questions is asked does not, by itself, constitute annoyance or oppression contemplated by 30(d)(3). *In re Statosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D. Nev. 1998); *see also Hearst/ABC-Viacom* 145 F.R.D. 59 at 63 ("the fact that a question is repetitive or irrelevant is not an appropriate ground for instructing a witness not to answer a question, since it does not involve a matter of privilege").

CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

that an employer must provide a leave of absence for an employee to serve in the Armed Forces of the United States. *See* Exhibit "12," Deposition of Zohar Lahav, pgs. 104-105. His ignorance was evidenced by the fact that Plaintiff Jackson was routinely forced to utilize vacation time in order to fulfill his obligations to the United States. Navy Reserves. *Id.* Further, Lahav was equally indifferent to the application of State Employment Laws including Nevada State Industrial Insurance. *Id.* at 123-24.

Most important in this regard was Plaintiffs' exploration of the very serious issue of employment discrimination by Lahav within the EPT. Lahav's testimony established that Las Vegas Sands Corporation has permitted him to head an Executive Management Team which, for fourteen years, has consisted only of Israelis. *Id.* at 28-31. Moreover, during those same fourteen years that Lahav and his fellow Israelis managed the Las Vegas Sands Executive Protection Team, not a single African American was ever promoted to any mid-level supervisory position (of which there are many) let alone placed on the Executive Management Team. *Id.* And contrary to Lahav's representation in his deposition, there were *many* African-American candidates who were extraordinarily qualified for promotion.

Given this *prima facie* demonstration of employment discrimination on the basis of religion and race, is it any wonder that Las Vegas Sands Corporation and Mr. Nagel are apoplectic that the extraordinary qualifications of the Plaintiffs DeJuan Robinson and James Jackson will become publicly known?[8] It is clear then, the claim that the disclosure of their professional achievements would in some manner "compromise" the safety of the Adelson

---

[8]    Mr. Nagel is well aware of the implications of failure to promote on the basis of race and religion due to his intimate involvement in a massive class action lawsuit filed by African-American secret service agents against the United States Secret Service. *Moore et al. v. Napolitano*, United States District Court for the District of Colombia, Case No. 1:00-cv-00953. Indeed, Mr. Nagel was actually deposed in relation to the allegations of widespread racial discrimination by the United States Secret Service.

CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

family is farcical. *See* Motion, p. 11:14. In truth, achievements of these men eviscerate Zohar Lahav's disgraceful allegation that they were "not qualified" for even mid-level supervisory positions.[9] So, quite to the contrary of Defendants' contention that Plaintiffs are "playing the race card," it is clear that Plaintiffs are doing nothing more than playing the cards they have been dealt.

In sum, the contention that Lahav would discriminate against these men on the basis of their religion and race in violation of Title VII of the Civil Rights Act of 1964 and yet not "willfully" violate their rights under the Fair Labor Standards Act is simply unworthy of belief.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendants' Motion to Seal and for Protective Order and Award Sanctions to Plaintiffs based on Defendants' Improper Conduct and Termination of the Deposition of Zohar Lahav.

DATED this 29th day of August, 2011.

CAMPBELL & WILLIAMS

By___/s/ Donald J. Campbell_____
    DONALD J. CAMPBELL, ESQ. (#1216)
    PHILIP R ERWIN, ESQ. (#11563)
    700 South Seventh Street
    Las Vegas, Nevada 89101
    Telephone: (702) 382-5222
    Facsimile: (702) 382-0540

---

[9]     As the Court will recall, DeJuan Robinson is a former United States Marshall who was one of a handful of national instructors in close quarter combat and was one of the supervisors of the Judicial Protection Detail in the criminal prosecution *United States v. Omar Ahmad Ali Abdel Rahman et al.*, United States District Court for the Southern District of New York Case No. 1:93-cr-00181. EPT Member James Jackson was twice named by the United States Navy as Sailor of the Year and, during a distinguished military career of eighteen years, supervised thousands of U.S. Navy personnel.



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of the foregoing was served on the 29th day of August, 2011 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

　　　　　　　　　　　　　　　 /s/  Philip R. Erwin, Esq.
　　　　　　　　　　　　　　　 An Employee of Campbell & Williams

CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW

700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

25