# EXHIBIT "15"

# EXHIBIT "15"

Table of Contents

### SCHEDULE 14A INFORMATION

Proxy Statement Pursuant to Section 14(a) of the
Securities Exchange Act of 1934

Filed by the Registrant ☑

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐ Preliminary Proxy Statement

☐ **Confidential, for Use of the Commission Only (as permitted by Rule 14a- 6(e)(2) )**

☑ Definitive Proxy Statement

☐ Definitive Additional Materials

☐ Soliciting Material Pursuant to § 240.14a-11(c) or § 240.14a-12

**LAS VEGAS SANDS CORP.**
(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☑ No fee required

☐ Fee computed on table below per Exchange Act Rules 14a-6(i)(4) and 0-11

   (1) Title of each class of securities to which transaction applies:

   (2) Aggregate number of securities to which transaction applies:

   (3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

   (4) Proposed maximum aggregate value of transaction:

   (5) Total fee paid:

☐ Fee paid previously with preliminary materials.

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

   (1) Amount Previously Paid:

   (2) Form, Schedule or Registration Statement No.:

   (3) Filing Party:

   (4) Date Filed:



## LAS VEGAS SANDS CORP.

### PROXY STATEMENT
### TABLE OF CONTENTS

|  | Page |
|---|---|
| PROXY AND VOTING INFORMATION | 1 |
|    Who Can Vote | 1 |
|    How Many Shares Can Be Voted | 1 |
|    How You Can Vote | 1 |
|    How to Revoke or Change Your Vote | 2 |
|    Other Matters to be Acted upon at the Meeting | 3 |
|    Adjournments and Postponements | 3 |
|    Electronic Delivery of Proxy Materials and Annual Report | 3 |
|    Delivery of One Proxy Statement and Annual Report to a Single Household to Reduce Duplicate Mailings | 3 |
|    Important Notice about Security | 4 |
| PRINCIPAL STOCKHOLDERS | 5 |
| BOARD OF DIRECTORS | 8 |
| INFORMATION REGARDING THE BOARD OF DIRECTORS AND ITS COMMITTEES | 11 |
| CORPORATE GOVERNANCE | 13 |
| EXECUTIVE OFFICERS | 17 |
| COMPENSATION DISCUSSION AND ANALYSIS | 18 |
| COMPENSATION COMMITTEE REPORT | 28 |
| EXECUTIVE COMPENSATION AND OTHER INFORMATION | 29 |
| DIRECTOR COMPENSATION | 47 |
| EQUITY COMPENSATION PLAN INFORMATION | 49 |
| AUDIT COMMITTEE REPORT | 50 |
| FEES PAID TO INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM | 51 |
| CERTAIN TRANSACTIONS | 52 |
| PROPOSAL NO. 1 ELECTION OF DIRECTORS | 55 |
| PROPOSAL NO. 2 RATIFICATION OF SELECTION OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM | 56 |
| PROPOSAL NO. 3 ADVISORY (NON-BINDING) VOTE ON COMPENSATION OF THE EXECUTIVE OFFICERS | 57 |
| PROPOSAL NO. 4 ADVISORY (NON-BINDING) VOTE ON HOW FREQUENTLY STOCKHOLDERS SHOULD VOTE TO APPROVE COMPENSATION OF THE NAMED EXECUTIVE OFFICERS | 58 |
| TIMEFRAME FOR STOCKHOLDER PROPOSALS FOR THE NEXT ANNUAL MEETING | 59 |
| OTHER INFORMATION | 59 |

Table of Contents

(5) Amounts included in "All Other Compensation" for 2010 are detailed in the following table.

### All Other Compensation

| Named Executive Officer | Life and Disability Insurance ($) [i] | Health Care Insurance ($) [ii] | Other ($) [iii][iv] | Total ($) |
|---|---|---|---|---|
| Sheldon G. Adelson | $ 10,499 | $ 29,440 | $ 2,833,458 | $2,873,397 |
| Michael A. Leven | $ 16,193 | $ 10,309 | $ 104,126 | $ 130,628 |
| Robert G. Goldstein | $ 6,263 | $ 17,632 | $ 4,316 | $ 28,211 |
| Kenneth J. Kay | $ 6,197 | $ 24,061 | — | $ 30,258 |
| Thomas Arasi | — | $ 49 | $ 72,000 | $ 72,049 |
| Steven C. Jacobs | — | — | $ 128,903 | $ 128,903 |

(i) Amounts imputed as income in connection with our payments in 2010 of premiums on group term life insurance and short-term disability insurance. A lower amount of group term life insurance is generally available to all salaried employees. Short-term disability insurance is also generally available to all salaried employees.

(ii) During 2010, the executive officers participated in a group supplemental medical insurance program available only to certain of our senior officers. The supplemental insurance coverage is in excess of the coverage provided by our group medical plan. The amounts in the table represent premiums, administration fees and claims paid for 2010.

(iii) The amount in the table for Mr. Adelson consists of (a) the Company's cost of $2,539,346 to provide security to Mr. Adelson and his immediate family, (b) the annual reimbursement of professional fees of $100,000 and (c) the costs of an automobile and driver provided to Mr. Adelson of $194,112 for 2010 pursuant to the terms of his employment agreement. The amount in the table for Mr. Leven consists of compensation of $104,126 related to Mr. Leven's personal use of aircraft that is imputed to Mr. Leven as compensation using the Internal Revenue Service Standard Industry Fare Level tables. The amount in the table for Mr. Goldstein consists of compensation related to travel expenses for Mr. Goldstein's spouse provided for under his 2010 employment agreement. The amount in the table for Mr. Arasi consists of a housing allowance. The amount in the table for Mr. Jacobs consists of allowances for housing and home leave.

(iv) Our executive officers, as well as certain other employees, are entitled to use workout facilities at the Canyon Ranch Spa at The Venetian Resort Hotel Casino and The Palazzo Resort Hotel Casino and to receive dry cleaning services. The Company provides certain of its executive officers with access to corporate memberships at country clubs for business purposes. The Company requires these executives to reimburse it in full for personal use of these facilities. On certain occasions, an executive officer's spouse or other immediate family member has accompanied the executive officer on flights on aircraft that we own, lease or provide pursuant to interchange or time sharing arrangements. The Company also permits its executive officers to use Company personnel for home repairs during business hours on a limited basis. The Company requires that these executives reimburse it in full for these services. There is no incremental cost to the Company for any of these benefits.

(6) Mr. Leven joined the Company in March 2009.

(7) Mr. Kay joined the Company in December 2008.

(8) Mr. Arasi joined the Company in August 2009 and resigned, effective April 30, 2011.

(9) Mr. Jacobs joined the Company as a consultant in March 2009 and became an employee of the Macau operations in August 2009. His employment was terminated on July 23, 2010.

30

# EXHIBIT "16"

# EXHIBIT "16"

# reviewjournal.com


PRINT THIS
Powered by Clickability

# Las Vegas Sands CEO Adelson paid $11.4 million in 2010

BY OSKAR GARCIA
ASSOCIATED PRESS

Posted: Apr. 30, 2011 | 2:16 a.m.

Billionaire Sheldon Adelson was paid $11.4 million as chief executive of casino developer Las Vegas Sands Corp in 2010, double his 2009 pay thanks to receiving his first cash bonus in three years, according to an Associated Press analysis of a regulatory filing submitted Friday.

The analysis shows Adelson's pay package included a $1 million salary, $1.8 million in option awards, the $5.7 million performance-based cash bonus and nearly $2.9 million in perks.

The salary, option awards and perks were nearly identical to what he received in 2009.

Adelson had not received a cash bonus since 2007, but in 2010 Sands became the world's largest publicly traded gambling company by revenue. Sands grew by opening a new casino-resort in Singapore, helping its revenues surpass those of MGM Resorts International. The $5.7 million bonus was tied to that growth.

Adelson's perks included $2.5 million in security for the 77-year-old executive and his immediate family, plus $100,000 in reimbursements for professional fees and $194,112 for a car and driver.

Adelson, his wife, Miriam, and their various family trusts own 57.3 percent -- or 436.7 million shares -- of the company's outstanding stock, according to the filing. The company had 728.7 million outstanding shares as of March 31.

Shares of Sands rose 75 cents to $47.01 on Friday, making Adelson's and his family's combined stake worth roughly $20.5 billion.

Over the course of 2010, Sands shares rose from $16.62, on Jan. 4, to $45.95, on Dec. 31.

The Associated Press formula calculates an executive's total compensation

during the last fiscal year by adding salary, bonuses, perks, above-market interest the company pays on deferred compensation and the estimated value of stock and stock options awarded during the year. The AP formula does not count changes in the present value of pension benefits. That makes the AP total slightly different in most cases from the total reported by companies to the Securities and Exchange Commission.

The value that a company assigned to an executive's stock and option awards for 2010 was the present value of what the company expected the awards to be worth to the executive over time. Companies use one of several formulas to calculate that value. However, the number is just an estimate, and what an executive ultimately receives will depend on the performance of the company's stock in the years after the awards are granted. Most stock compensation programs require an executive to wait a specified amount of time to receive shares or exercise options.

**Find this article at:**
http://www.lvrj.com/business/las-vegas-sands-ceo-adelson-paid-11-4-million-in-2010-121018019.html

☐ Check the box to include the list of links referenced in the article.

Copyright © Stephen Media, LLC. All rights reserved. Any reproduction or distribution (except for personal, non-commercial purposes), in any form or by any means, without the express written consent of Stephens Media, LLC, is strictly prohibited.